# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROGER GOLDINGAY**, <br><br> Plaintiff, <br><br> v. <br><br> **PROGRESSIVE CASUALTY INSURANCE COMPANY and CHEVRON U.S.A. INC.**, <br><br> Defendants. | Case No. 3:17-cv-1491-SI (Lead Case) <br><br> Case No. 3:17-cv-1494-SI (Trailing Case) <br><br> **OPINION AND ORDER** |
| **CAROL OTIS**, <br><br> Plaintiff, <br><br> v. <br><br> **PROGRESSIVE CASUALTY INSURANCE COMPANY and CHEVRON U.S.A. INC.**, <br><br> Defendants. | |

Brooks M. Foster, CHENOWETH LAW GROUP, PC, 510 SW Fifth Avenue, Fifth Floor, Portland, OR 97204. Of Attorney for Plaintiff.

J. Matthew Donohue and Kristin M. Asai, HOLLAND & KNIGHT LLP, 2300 US Bancorp Tower, 111 SW Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendant Progressive Casualty Insurance Company.

David A. Bledsoe and Julie A. Wilson-McNerney, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209. Of Attorneys for Defendant Chevron U.S.A. Inc.

**Michael H. Simon, District Judge.**

Plaintiffs Roger Goldingay ("Goldingay") and Carol Otis ("Otis") (collectively, "Plaintiffs") are husband and wife. They each filed their own lawsuit in state court against Defendants Progressive Casualty Insurance Company ("Progressive") and Chevron U.S.A Inc. ("Chevron") (collectively, "Defendants"). Based on substantially identical factual allegations, Goldingay and Otis assert substantially identical legal claims based exclusively on state law. Defendants timely removed the two lawsuits to federal court, and the Court has consolidated these actions. Progressive has moved to dismiss all claims for failure to state a claim. After answering, Chevron has moved for partial judgment on the pleadings against Plaintiffs' claim of financial elder abuse and Plaintiffs' claim for declaratory relief. Because the standard for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is substantially identical to the standard for a motion for judgment on the pleadings under Rule 12(c), Progressive and Chevron's motions are evaluated together.

## STANDARDS

**A. Motion to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations

of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**B. Motion for Judgment on the Pleadings**

A Rule 12(c) "motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6)." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Dismissal for failure to state a claim under Rule 12(b)(6) "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)). In addition, "to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (*Iqbal* standard applies to review of Rule 12(c) motions).

## BACKGROUND

Plaintiffs Goldingay and Otis are a married couple. Goldingay is approximately 67 years old, and Otis is approximately 68. In 2010, Plaintiffs purchased real property located at 8145 S.E. 82nd Avenue in Portland, Oregon. Plaintiffs refer to that property as "Cartlandia" because it hosts a variety of different food carts. In this lawsuit, the parties refer to that property as the "Cartlandia Property." In 2005, Defendant Progressive purchased real property (the "Progressive Property") that is northwest and uphill from the Cartlandia Property. At some point in time, Defendant Chevron, or its alleged predecessor, Standard Oil Co. Inc. ("Standard") owned the Progressive Property. From approximately 1936 to 1955, Chevron (or Standard) allegedly operated a petroleum bulk plant on the Progressive Property. Neither Chevron nor Standard is the current owner or operator of the Progressive Property. The City of Portland owns a narrow public right-of-way (the "Springwater Corridor"), which lies between the Cartlandia Property and the Progressive Property.

After purchasing the Cartlandia Property, Plaintiff hired Evergreen Environmental Management, LLC ("Evergreen") to perform an environmental assessment at that site. Evergreen identified the presence of petroleum contamination in the groundwater. Evergreen opines that at least some of the contamination on Plaintiff's Cartlandia Property likely came from the petroleum bulk plant that Chevron previously operated on the Progressive Property, which is uphill from the Cartlandia Property. As part of its work for Plaintiffs, Evergreen obtained water samples from the Springwater Corridor. These samples reveal concentrations of petroleum in the groundwater in the Springwater Corridor only a few feet away from Progressive's property line. Groundwater in the area flows from the Progressive Property through the Springwater Corridor and across the Cartlandia Property on its way to a nearby creek.

Goldingay and Otis have incurred costs paid or owed to Evergreen for its environmental consulting, sampling, and laboratory analyses. Plaintiffs, through their counsel, have demanded that Progressive and Chevron reimburse Plaintiffs for those costs. Both Progressive and Chevron declined.

On July 17, 2017, the Oregon Department of Environmental Quality ("DEQ") sent letters that identified both Progressive and Chevron as potentially responsible parties for the contamination found on the Progressive Property. On August 10, 2017, Goldingay sued both Progressive and Chevron in Oregon state court. Also on August 10, 2017, Otis, in a separate action, also sued both Progressive and Chevron in Oregon state court. Both lawsuits allege essentially identical facts. Progressive and Chevron timely removed both actions to federal court, and this Court consolidated the two lawsuits.

## DISCUSSION

Plaintiffs allege two common law claims against Progressive only and two statutory claims against both Progressive and Chevron. Against Progressive only, Plaintiffs allege trespass and nuisance. Against both Progressive and Chevron, Plaintiffs allege violations of Oregon Revised Statutes ("ORS") § 465.255 (strict liability for remedial action costs for injury of natural resource) and ORS § 124.110 (financial elder abuse). Plaintiffs seek money damages up to $10,000 for Goldingay and up to $10,000 for Otis. In addition, Plaintiffs seek a declaration that Progressive and Chevron are each liable for all future remediation costs for the Cartlandia Property, plus injunctive relief. Progressive moves to dismiss Plaintiffs' common law claims of trespass and nuisance and Plaintiffs' statutory claims of strict liability and financial elder abuse. Progressive also moves to dismiss Plaintiffs' request for declaratory relief. Chevron moves for judgment on the pleadings only against Plaintiffs' claim for financial elder abuse and request for declaratory relief.

PAGE 5 – OPINION AND ORDER

## A. Trespass and Nuisance

Under Oregon common law, a claim for trespass involves "an actionable invasion of a possessor's interest in the exclusive possession of land." *Carvalho v. Wolfe*, 207 Or. App. 175, 178 (2006) (quoting *Martin et ux. V. Reynolds Metals Co.*, 221 Or. 86, 90 (1959)). A claim for nuisance involves "an actionable invasion of a possessor's interest in the use and enjoyment of his land." *Id.* In Oregon, both trespass and nuisance claims "require plaintiffs to show that the intrusion was intentional or, if unintentional, the result of defendants' negligence or ultrahazardous activity." *Gibson v. Morris*, 270 Or. App. 608, 613 (2015) (citing *Carvalho*, 207 Or. App. at 180-81). In the case of continuing intrusion, conduct is intentional if the intruder knew of the continuing intrusion and allowed the intrusion to persist, regardless of whether the defendant acted intentionally when the intrusion began. *Id. (*citing *McGregor v. Barton Sand Gravel, Inc.*, 62 Or. App. 24, 31 n.5 (1983). Conduct is negligent if the intruder should have known of the continuing intrusion and allowed the intrusion to persist. *Id.* at 613 n.2. "The question as to what defendants knew or should have known, under the circumstances . . . [is] a question of fact for the finder of fact." *Id.* at 616.

Progressive argues that Plaintiffs fail to state claims for trespass and nuisance because they have not sufficiently alleged that Progressive knew or should have known of the intrusion caused by the petroleum contamination migrating onto Plaintiffs' property. Plaintiffs have alleged that in August 2014, Evergreen notified Progressive that its property was the former site of a petroleum bulk plant. At that time, Plaintiffs also allege, the Progressive representative responsible for environmental issues told Evergreen that he "wouldn't know where to look" for documentation regarding the environmental condition of the Progressive Property, and "doubted it was available." Plaintiffs further allege that on August 22, 2016, their attorney sent Progressive a letter containing Evergreen's report and its conclusion that the contamination was coming from

PAGE 6 – OPINION AND ORDER

the Progressive Property. Such allegations are sufficient to raise the plausible inference that Progressive should have known of, or had a duty to investigate, the migrating contamination in either August of 2014, when first alerted to the fact that the Progressive Property was formerly the site of a petroleum bulk plant, or August of 2016, when informed that Evergreen's report concluded that the Progressive Property was the likely source of the migrating contamination.

In its reply brief, Progressive raises the new argument that Plaintiffs' trespass and nuisance claims fail because they have not identified any action by Progressive that caused the contamination, and Progressive therefore has no duty to prevent the trespass or nuisance. Progressive cites no case law supporting the proposition that it has a duty to abate only those conditions creating a nuisance or trespass that it has caused, and not those that it has inherited as a successor in interest. Moreover, Such a proposition is generally contrary to the common law.

Oregon law often "relie[s] on the Restatement [of Torts] in describing common trespass principles . . . nothing in [Oregon] cases suggests any tension between Oregon trespass law and the common law as the Restatement describes it." *Marlow v. City of* Sisters, 281 Or. App. 462, 470 (2016). Section 839 of the Restatement (Second) provides:

> A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
>
> (a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and
>
> (b) he knows or should know that it exists without the consent of those affected by it, and
>
> (c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.

Restatement (Second) of Torts § 839 (1979).

PAGE 7 – OPINION AND ORDER

Similarly, section 161 of the Restatement provides that a trespass may be committed by the continued presence on the land of a "thing" that a landowner's predecessor in interest tortiously placed there, if the landowner fails to remove the thing after having learned of it. Restatement (Second) of Torts § 161 (1965). The question as to Progressive's liability for the migrating contamination, therefore, is not whether Progressive caused the contamination, but whether it knew or should have known that the contamination was causing a trespass or nuisance and failed to abate it. As explained above, Plaintiffs have alleged sufficient facts to support their claim.

**B. ORS Chapter 465 (Strict Liability)**

ORS § 465.255 holds liable any person who became the owner or operator of a property associated with a release of hazardous substances into the environment "after the time of the acts or omissions that resulted in the release, and who knew or reasonably should have known of the release when the person first became the owner or operator." ORS § 465.255(1)(b). For an owner to prove it did not have "reason to know" when it first became the owner, it "must have undertaken, at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability." ORS § 465.255(6).

As with Plaintiffs' trespass and nuisance claims, Progressive argues that Plaintiffs have not stated a claim under ORS § 465.255 because Plaintiffs have not alleged facts showing that Progressive knew or should have known of the alleged petroleum release. Plaintiffs have alleged, however, that an investigation by Evergreen in 2014 concluded that a petroleum bulk plant was previously located at the Progressive Property. Plaintiffs further allege that the petroleum contamination has been migrating from the Progressive Property onto the Cartlandia Property throughout Progressive's ownership of the Progressive Property, and the DEQ has identified Progressive as potentially responsible party ("PRP") of the contamination in the area. Finally,

PAGE 8 – OPINION AND ORDER

Plaintiffs allege that when Evergreen presented its findings on the petroleum plant to the Progressive representative purportedly responsible for environmental issues, and asked about additional documentation on the environmental condition of the property, that representative responded that he "wouldn't know where to look and doubted it was available." Such assertions are sufficient to raise a plausible inference that an appropriate inquiry at the time of acquisition would have revealed to Progressive the same information about the petroleum bulk site that Evergreen uncovered. The Progressive representative's alleged statements that he "wouldn't know where to look" for documentation on the environmental condition of the Progressive Property also supports an inference that an adequate inquiry was not undertaken, in which case Progressive cannot establish that it did not have reason to know of the release. Whether Progressive did in fact undertake an appropriate inquiry into the property at the time of acquisition and whether that inquiry gave Progressive no reason to know of a hazardous release are questions of fact to be resolved at a later stage of this litigation. At the pleading stage, however, Plaintiffs have sufficiently alleged that Progressive either knew or should have known of the hazardous release.

**C. Declaratory Relief**

Under ORS § 465.257, any party potentially liable under ORS § 465.255 who incurs remedial action costs for the cleanup of a hazardous release may seek contribution from any other party potentially liable under ORS § 465.255. Pursuant to this statute, Plaintiffs seek a declaration that Defendants are liable for all future remedial action costs associated with the contamination. Defendants challenge Plaintiffs' standing to bring such a claim.

To state a claim for declaratory judgment in federal court, a plaintiff must establish Article III standing. Standing to seek declaratory relief requires that there "be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of a present

PAGE 9 – OPINION AND ORDER

right upon established fact.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)). Declaratory relief is appropriate where "the facts alleged, under all circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Ed Niemi Oil Co., Inc. v. Exxon Mobil Corp.*, 2013 WL 957007, *11 (D. Or., March 11, 2013) (quoting *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000). Plaintiffs allege that DEQ has specifically named Progressive and Chevron as PRPs for the hazardous release on the Progressive Property. Defendants argue, however, that Plaintiffs' request for declaratory relief fails because Plaintiffs have alleged neither that DEQ has issued a remedial action order, nor that Plaintiffs have applied for DEQ's voluntary clean-up program, and the likelihood of remedial costs at the Cartlandia Property are thus too remote to warrant declaratory relief.

To establish standing for declaratory relief under ORS § 465.257, a plaintiff must allege facts sufficient to establish that the DEQ is likely to require or approve remedial action. In *Ed Niemi Oil Co. v. Exxon Mobil Corp.*, the court held that the plaintiff did not have standing to seek a declaratory judgment under ORS § 465.257 because the need for future remedial action was too speculative. *Id.* at *11. In that case, a certain amount of cleanup had already been completed pursuant to a DEQ order. *Id.* The DEQ then issued a No Further Action Determination ("NFA") declaring that further remedial action would be necessary only if "new or undisclosed facts show that the cleanup does not comply with the referenced rules." *Id.* (quotation marks omitted). The plaintiff had not alleged that any work was currently planned at the site. *Id.* Given this evidence that future remedial action was unlikely, the court reasoned that

future remedial action costs were too speculative to establish standing for the plaintiff in that case.

In *McDonald v. Sun Oil Co.*, the DEQ had ordered the plaintiff to refrain from removing or disturbing mercury contaminated calcine piles on his property, which the plaintiff had been selling and distributing as decorative rock. 548 F.3d 774, 778 (9th Cir. 2008), *rev'd on other grounds by CTS Corp. v. Waldburger*, 124 S. Ct. 2175 (2014). The plaintiff then sued the previous landowner for contribution as the party responsible for the contaminated rock piles under ORS § 465.257. *Id.* The Ninth Circuit upheld the district court's grant of summary judgment for the defendant, holding that private parties could not independently undertake "remedial action" for the purposes of the statute. *Id.* at 785. Rather, "for 'remedial action' to exist, the State must undertake, require, or oversee the action." *Id*. Thus, although Plaintiffs need not allege that DEQ has issued a remedial action order in order for Plaintiffs to have established standing to seek declaratory judgment, they must allege facts sufficient to establish that DEQ-approved or required remedial action on the Cartlandia Property is likely to occur.

Plaintiffs allege that "Mr. Goldingay arranged for Evergreen to perform 'removal' work within the meaning of ORS § 465.200(2)." Under *McDonald*, such an allegation amounts to a private undertaking, which is not "remedial action" for the purposes of the contribution statute. Plaintiffs have also alleged, however, that "DEQ and its applicable regulations will require additional work in the future to investigate, delineate, assess, evaluate, remove, and/or remediate the contamination so as to obtain a [NFA]." Moreover, Plaintiffs allege that there is ongoing contamination migration from the Progressive Property, through the publically owned Springwater Corridor, across the Cartlandia Property and toward a different nearby waterway. The facts of *McDonald*, by contrast, do not indicate that the contamination was actively

migrating from the property, or in any other way continuing to threaten neighboring land. The DEQ order in that case had mandated only that the plaintiffs refrain from removing the piles of contaminated rock, not that they conduct proactive remedial action. In this case, Plaintiffs have alleged that contamination from the Progressive Property continues to migrate into public waterways and private neighboring land. Plaintiffs have thus plausibly alleged that the Progressive Property, as the source of the contamination, is likely to undergo DEQ-approved or required remedial action.

Plaintiffs have not, however, plausibly alleged that the Cartlandia Property, which Plaintiffs allege is affected by, but not a source of, contamination, is likely to undergo DEQ-approved or required remedial action. The value of Plaintiffs' property is likely harmed by the presence of contamination. As with the contaminated property in *McDonald*, however, economic harm resulting from the presence of contamination is not necessarily sufficient to trigger contribution under ORS § 465.257 absent further involvement from DEQ. Although Plaintiffs may be approved for DEQ's voluntary cleanup program, as they argue in their response brief, they have not yet alleged plausible facts to show that the Cartlandia property is likely to qualify for the program, nor that they have applied or been approved for that program. Indeed, neither complaint makes reference to the voluntary program. As such, Plaintiffs have failed to establish standing because they have not sufficiently alleged that future remedial action costs are likely to be incurred.

### D. Financial Elder Abuse

Oregon law creates a statutory cause of action for financial abuse of a "vulnerable person," ORS § 124.110(1)(a), which is defined to include any person aged 65 or older.

ORS §§ 124.100(1)(e)(A), 124.100(1)(a).[1] Financial abuse occurs when a person "wrongfully takes or appropriates money or property of a vulnerable person" or fails to return property held for the vulnerable person without good cause. ORS § 124.110(1)(a). In *Church v. Woods*, the Court of Appeals of Oregon observed that ORS chapter 124 does not define the term "take" and defined it to mean "to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, or use of" 190 Or. App. 112, 117 (2003) (quoting *Webster's Third New Int'l Dictionary* 2330 (unabridged ed. 1993)).

Both Defendants challenge Plaintiffs' claim for financial elder abuse on the grounds that Plaintiffs have not alleged a taking of money or property as contemplated by Oregon's financial elder abuse laws. Plaintiffs argue that the word "take" in the financial abuse statute should be defined broadly to include the special meaning of "take" within condemnation law, where a "taking of property" means a "substantial interference with the use and enjoyment of property," *Vokoun v. City of Lake Oswego*, 335 Or. 19, 26 (2002). No Oregon court, however, has so defined "take" in the context of ORS § 124.110, and in fact Oregon courts have consistently applied the "ordinary meaning," with no reference to the specialized meaning from the real property context. *See, e.g., Church*, 190 Or. App. at 117 (defining "take" by its "ordinary meaning"); *Schmidt v. Noonkester*, 287 Or. App. 48, 55 (2017) (emphasizing that, for the purposes of ORS § 124.110, a taking must involve a transfer of money or property). Moreover, the Oregon Supreme Court recently defined, in dicta, the phrase "wrongfully takes or appropriates" in ORS § 124.110(1)(a) as "refer[ing] to the improper acquisition by another person of the vulnerable person's money or property—such as by fraud, conversion, or theft."

---

[1] This opinion uses the text and numbering of ORS § 124.100 as amended by section 5, chapter 568, Oregon Laws, 2015, although that text does not become operative until July 1, 2018.

*Bates v. Bankers Life & Cas. Co.*, 362 Or. 337, 344 (2018). As with the definitions propounded by the Oregon Court of Appeals, such a definition involves the complete acquisition of, and not mere interference with or improper use of, a vulnerable person's money or property. Although in certain circumstances, an interference with a vulnerable person's right of possession of money or property may be so persistent or severe as to rise to the level of conversion or wrongful acquisition, such facts are not alleged in this case.

To hold that the interference with the use and enjoyment of property alleged in this case is the functional equivalent of a transfer of property, as Plaintiffs argue, could effectively convert every claim brought by a person over the age of 65 into a financial elder abuse claim. The Court is not persuaded that such a result is consistent with either the text or intent of ORS § 124.110. This is particularly true in light of *Bates*, in which the Oregon Supreme Court followed the text of ORS § 124.110, rather than give the statute an expansive reading. In that case, the Oregon Supreme Court held that an insurer's bad faith withholding of a claim payment from an older person did not violate ORS § 124.110(1)(b), which prohibits the wrongful withholding of money or property from such a person. *Id.* at 345. "Because 'the money or property' that plaintiffs transferred to [the insurer]—premiums—is factually and legally different," from the money owed as a claim payment, the plaintiffs could not demonstrate that the insurer had "acquired ownership or control of [their] money or property," as required by the text of the statute. *Bates*, 362 Or. at 344-45. Similarly, Plaintiffs in this case have not alleged that Defendants have acquired, rather than merely interfered with, Plaintiffs' property, as is required by the text of ORS § 124.110(1)(a). Because Plaintiffs have not alleged a transfer or acquisition of money or property, they have failed to state a claim for financial elder abuse under ORS § 124.110. This claim is dismissed with prejudice.

E.  Attorney's Fees

In their prayer for relief, Plaintiffs also request reasonable attorney fees pursuant to ORS § 20.080. Progressive contests Plaintiffs' eligibility for attorney fees under the statute. Oregon law allows for reasonable attorney fees where a total demand for monetary damages in the lawsuit is $10,000 or less. ORS § 20.080(1); *Johnson v. White*, 249 Or. 461, 464 (1968). To be eligible for attorney fees, a plaintiff must make a written demand for the payment of the claim upon the defendant at least 30 days before the commencement of the action. ORS § 20.080(1). In an action for damage to property, the demand must include "documentation of the repair of the property, a written estimate for the repair of the property or a written estimate of the difference in the value of the property before the damage and the value of the property after the damage." ORS § 20.080(3)(b). If a plaintiff acquires any additional information of the kind that must be included in the demand letter after making the demand but before commencing the action, the plaintiff must provide that information to the defendant as soon as possible. ORS § 20.080(4).

Defendants concede, for the purposes of the present motion, that Plaintiffs' total monetary demand for each plaintiff does not exceed $10,000. Progressive nevertheless challenges Plaintiffs' claim for attorney fees, arguing that Plaintiffs did not comply with ORS § 20.080(4). Progressive argues that Plaintiffs failed to provide Progressive with the January 16, 2017 updated Evergreen environmental assessment and estimate. Progressive is correct that Plaintiffs do not allege that they provided Progressive with the January 16, 2017 updated Evergreen report. There is no indication in the complaint, however, that the updated Evergreen report contained information relating to the repair of the property or the difference in the value of the property before and after the damage, which is the kind of information that the statute requires to be forwarded to defendants. The only reference in the complaint to the contents of the updated report note that it concluded it was likely that the petroleum

PAGE 15 – OPINION AND ORDER

contamination from the former bulk plant "is still working its way . . . through the Cartlandia" Property. Such information may speak to Progressive's potential liability, but does not relate to the value of the property or necessary repairs. Whether the updated report in fact contained information of the sort that Plaintiffs were required to send to Progressive is a question of fact to be resolved at a later stage of this litigation. For the purposes of the present motion, Plaintiffs have sufficiently pleaded their claim for attorney fees.

## CONCLUSION

Progressive's Motion to Dismiss (ECF 15) is GRANTED IN PART and DENIED IN PART. Chevron's Motion for Judgment on the Pleadings (ECF 17) is GRANTED. Both motions are granted as to Plaintiffs' claim for financial elder abuse, which is dismissed with prejudice, and granted as to Plaintiffs' request for declaratory judgment, which is dismissed without prejudice. Plaintiffs may file an amended pleading within two weeks from the date of this Opinion and Order if they believe that additional allegations will cure the identified deficiencies.

**IT IS SO ORDERED**.

DATED this 25th day of January, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge