# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROGER GOLDINGAY**, <br><br> Plaintiff, <br><br> v. <br><br> **PROGRESSIVE CASUALTY INSURANCE COMPANY and CHEVRON U.S.A. INC.**, <br><br> Defendants. | Case No. 3:17-cv-1491-SI (Lead Case) <br><br> Case No. 3:17-cv-1494-SI (Trailing Case) |
| **CAROL OTIS**, <br><br> Plaintiff, <br><br> v. <br><br> **PROGRESSIVE CASUALTY INSURANCE COMPANY and CHEVRON U.S.A. INC.**, <br><br> Defendants. | **OPINION AND ORDER ON ATTORNEY FEES** |

Brooks M. Foster, CHENOWETH LAW GROUP, PC, 510 SW Fifth Avenue, Fifth Floor, Portland, OR 97204. Of Attorneys for Plaintiff.

J. Matthew Donohue and Kristin M. Asai, HOLLAND & KNIGHT LLP, 2300 US Bancorp Tower, 111 SW Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendant Progressive Casualty Insurance Company.

David A. Bledsoe and Julie A. Wilson-McNerney, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209. Of Attorneys for Defendant Chevron U.S.A. Inc.

**Michael H. Simon, District Judge.**

Roger Goldingay ("Goldingay") and Carol Otis ("Otis") (collectively, "Plaintiffs") are husband and wife. They each filed their own lawsuit in state court against both Progressive Casualty Insurance Company ("Progressive") and Chevron U.S.A. Inc. ("Chevron") (collectively, "Defendants"). In these two lawsuits, Plaintiffs assert only state law claims related to real property in Oregon that they own in common. Defendants timely removed both actions based on diversity jurisdiction. In October 2018, the parties settled their disputes, except for attorney fees, and the Court entered stipulated judgments. Plaintiffs now move for an award of reasonable attorney fees. Defendants oppose Plaintiffs' motion, arguing first that Plaintiffs are not entitled to any attorney fees and second that if Plaintiffs are entitled to some fees, the amount awarded by the Court should be less than what Plaintiffs request. For the reasons that follow, Plaintiffs' request for attorney fees is granted in part, and the Court does not believe that oral argument is likely to be helpful.

## STANDARDS

"In an action where a federal district court exercises subject matter jurisdiction over a state law claim, so long as state law does not contradict a valid federal statute, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009) (citation and quotation marks omitted). Under Oregon law, if a plaintiff prevails in an action where the amount pleaded is $10,000 or less, the plaintiff may seek a reasonable amount of attorney fees to be fixed by the court. *See* Or. Rev. Stat. § 20.080.

After concluding that a prevailing party shall recover reasonable attorney fees, a court applying Oregon law must consider the specific factors set forth in Or. Rev. Stat. § 20.075 to

determine the amount of attorney fees to be awarded. The specific factors set forth in Or. Rev. Stat. § 20.075(1) are:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
>
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

Or. Rev. Stat. § 20.075(1).[1] After considering these eight factors, Or. Rev. Stat. § 20.075(2) directs the court to consider the following additional eight factors:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

---

[1] Under subsection (1), these factors are to be first considered in determining whether to award fees "in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." In addition, in any case in which an award of fees is authorized or required, the court shall consider the factors specified in subsection (1) as well as the factors specified in subsection (2) "in determining the amount of an award of attorney fees in those cases." Or. Rev. Stat. § 20.075(2).

> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
>
> (c) The fee customarily charged in the locality for similar legal services.
>
> (d) The amount involved in the controversy and the results obtained.
>
> (e) The time limitations imposed by the client or the circumstances of the case.
>
> (f) The nature and length of the attorney's professional relationship with the client.
>
> (g) The experience, reputation and ability of the attorney performing the services.
>
> (h) Whether the fee of the attorney is fixed or contingent.

Or. Rev. Stat. § 20.075(2). Oregon law further directs that when analyzing these factors, a court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 185, 188 (1998). The court, however, "ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision." *Frakes v. Nay*, 254 Or. App. 236, 255 (2012).

Under Or. Rev. Stat. § 20.075(2), factor (a) generally relates to the reasonableness of the number of hours expended by counsel for the prevailing party, factors (c) and (g) generally relate to the reasonableness of the hourly rates charged, and factor (d) generally informs whether an upward or downward adjustment might be appropriate. Taken together, these factors are comparable to what is often referred to as the "lodestar" method for calculating a reasonable attorney fee. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (holding that the lodestar method yields a presumptively reasonable fee, subject to either upward or downward adjustment as appropriate); *see also Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 221 (2013)

("The lodestar approach that the parties have used is at least a permissible one under the statutes involved," including Or. Rev. Stat. § 20.075.); *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 255 Or. App. 525, 554 (2013) ("The lodestar method that the trial court used is a commonly applied and permissible approach for determining the reasonableness of a fee award . . . .").

A district court's disposition of a motion for attorney fees must "provide a reasonably specific explanation for all aspects of a fee determination" in order to allow for "adequate appellate review." *Perdue*, 559 U.S. at 558. The lodestar method of calculating attorney fees "yields a fee that is presumptively sufficient to achieve this objective." *Id.* Although the lodestar calculation results in a presumptively reasonable fee, this fee may be adjusted in certain circumstances. *Id.*

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[2] In making this calculation, the district court should take into consideration various factors of reasonableness, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of

---

[2] It is "well established that time spent in preparing fee applications" also is compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

attorney fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id*. at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id*. (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quotation marks omitted)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Id*. (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

After determining the number of hours reasonably spent, the district court then calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable number of hours. This calculation yields the lodestar amount. For this purpose, the "'prevailing market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.*

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, courts in the District of Oregon have the benefit of several billing rate surveys. One useful survey is the Oregon State Bar 2017 Economic Survey ("OSB 2017 Survey"), which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy of the OSB 2017 Survey is available at http://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited on February 19, 2019).

There is a strong presumption that the fee arrived at through the lodestar calculation is a reasonable fee. *Perdue*, 559 U.S. at 552. A district court may, however, adjust the lodestar amount in "rare" and "exceptional" cases, such as when a particular factor bearing on the reasonableness of the attorney fee is not adequately taken into account in the lodestar calculation. *See Perdue*, 559 U.S. at 552-54 (finding that, in certain circumstances, the superior performance of counsel may not be adequately accounted for in the lodestar calculation); *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (finding that although in ordinary cases the "results obtained" factor is deemed adequately accounted for in the lodestar calculation, it may serve as a basis to adjust the lodestar when "an attorney's *reasonable* expenditure of time on a case [is not] commensurate with the fees to which he [or she] is entitled").

## BACKGROUND

In 2010, Plaintiffs purchased real property located at 8145 SE 82nd Avenue in Portland, Oregon. The Parties refer to that property as "Cartlandia" or the "Cartlandia Property" because a variety of food carts are situated on the property. In 2005, Progressive purchased real property

(the "Progressive Property") that is northwest and uphill from the Cartlandia Property. At some point in time, Chevron, or its predecessor, Standard Oil Company Inc. ("Standard"), previously owned the Progressive Property. From approximately 1936 to 1955, Chevron (or Standard) allegedly operated a petroleum bulk plant on the Progressive Property. Neither Chevron nor Standard is the current owner or operator of the Progressive Property. The City of Portland owns a narrow public right-of-way (the "Springwater Corridor"), which lies between the Cartlandia Property and the Progressive Property.

After purchasing the Cartlandia Property, Plaintiff hired Evergreen Environmental Management, LLC ("Evergreen") to perform an environmental assessment at that site. Evergreen identified the presence of petroleum contamination in the groundwater. Evergreen opined that at least some of the contamination on Plaintiff's Cartlandia Property likely came from the petroleum bulk plant that Chevron previously operated on the Progressive Property, which is uphill from the Cartlandia Property. As part of its work for Plaintiffs, Evergreen obtained water samples from the Springwater Corridor. These samples revealed concentrations of petroleum in the groundwater in the Springwater Corridor only a few feet away from Progressive's property line. Groundwater in the area flows from the Progressive Property through the Springwater Corridor and across the Cartlandia Property on its way to a nearby creek.

On July 17, 2017, the Oregon Department of Environmental Quality ("DEQ") sent letters to both Progressive and Chevron, identifying them as potentially responsible parties for the contamination found on the Progressive Property. On May 22, 2018, DEQ issued a letter to Progressive demanding that Progressive enroll in DEQ's Voluntary Cleanup Program. On July 26, 2018, Progressive confirmed to Plaintiffs that Progressive had applied to the Voluntary Cleanup Program.

On August 10, 2017, Goldingay sued both Progressive and Chevron in state court. Also that day, Goldingay's wife, Otis, brought a separate lawsuit against Progressive and Chevron. Both lawsuits asserted only state law claims related to the same property based on identical facts. Progressive and Chevron timely removed both actions.

Against both Progressive and Chevron, Plaintiffs alleged violations of Or. Rev. Stat. § 465.255 (strict liability for remedial action costs for injury of natural resource) and Or. Rev. Stat. § 124.110 (financial elder abuse). Against Progressive only, Plaintiffs also alleged trespass and nuisance. Additionally, Plaintiffs requested declaratory and injunctive relief, seeking to hold both Progressive and Chevron liable for future remediation costs related to the Cartlandia Property. Defendants asserted counterclaims under Or. Rev. Stat. § 465.255. Progressive moved to dismiss all claims asserted by Plaintiffs, and Chevron moved to dismiss only Plaintiffs' claims for elder abuse and declaratory judgment. The Court has dismissed with prejudice Plaintiffs' claims for elder abuse and declaratory judgment.

In October 2018, the parties settled their disputes, except for attorney fees. The parties filed a proposed stipulated judgment in each case, and the Court entered the stipulated judgments. Among other things, the parties stipulated that within 21 days after entry of the judgments, Plaintiffs would be entitled to move for an award of reasonable attorney fees under Or. Rev. Stat. § 20.080 against Progressive on Plaintiffs' claims of trespass and nuisance.[3] The parties also stipulated that, under the same timeframe, Plaintiffs would be entitled to move for an

---

[3] That statutes provides, in relevant part: "In any action for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $10,000 or less, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the prosecution of the action, if the court finds that written demand for the payment of such claim was made on the defendant . . . not less than 30 days before the commencement of the action . . . ." Or. Rev. Stat. § 20.080(1).

award of reasonable attorney fees under the same statute against both Progressive and Chevon on Plaintiffs' claim for past costs under Or. Rev. Stat. § 465.255.

In the stipulated judgments, Plaintiff Goldingay was awarded $10,000 in damages against both Defendants for his claims against Progressive for trespass and nuisance, and against both Defendants for past costs. Of this total, the parties agreed that $5,000 would be paid by Progressive and $5,000 would be paid by Chevron. The stipulation as provided that Goldingay would be entitled to reasonable attorney fees under Or. Rev. Stat. § 20.080, in an amount to be determined by the Court. Similarly, Plaintiff Otis was awarded $8,000 in damages, with Progressive and Chevron each paying $4,000. The stipulation also provided that Otis would be entitled to reasonable attorney fees in an amount to be determined by the Court.

## DISCUSSION

### A. Whether Plaintiffs are Entitled to Any Attorney Fees

Both Progressive and Chevron argue that Plaintiffs are not entitled to any attorney fees because Plaintiffs also sought non-monetary relief and Plaintiffs are not a prevailing party. The Court's analysis begins with the text of the agreement of the parties, in this case the settlement agreement and stipulated judgment. In each stipulated judgment the parties agreed that

> within 21 days from the date of entry of this stipulated judgment, Goldingay is entitled to move for an award of reasonable attorney fees against Progressive on his claims for trespass, nuisance, and past costs under ORS 465.255 and Goldingay is entitled to move for an award of reasonable attorney fees against CUSA on his claim for past costs under ORS 465.255. Neither Otis nor Defendants shall recover costs or disbursements.

ECF 72, ¶ 4 in Case No. 17-cv-1491-SI (Goldingay); ECF 74, ¶ 4 in Case No. 17-cv-1494 (Otis).

Relatedly, in paragraph five of the stipulated judgment, the parties agreed that

> Goldingay [or Otis] is *awarded* pursuant to ORS 20.080 any reasonable attorney fees in an amount to be determined pursuant to Fed. R. Civ. P. 54.

PAGE 10 – OPINION AND ORDER

ECF 72, ¶ 5 in Case No. 17-cv-1491-SI (Goldingay); ECF 74, ¶ 5 in Case No. 17-cv-1494-SI (Otis) (emphasis added).

The Court interprets these provisions as Defendants waiving their argument that Plaintiffs are not entitled to any attorney fees. *See generally Burger v. Rock and Roll Chili Pit, Inc.*, 2018 WL 1156237, at *2 (D. Or. Mar. 5, 2018) (holding that when stipulation included provision that "parties reserve the right to submit petitions for attorney fees, costs and disbursements" plaintiff had "waived any argument that Defendants were precluded from seeking fees and costs); *see also Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir. 1980) (holding that when parties agree to a "stipulation and order of dismissal [that] expressly reserved to defendants the right to move for 'costs and disbursements of this action,'" plaintiffs could not later claim "that the reservation was inoperative from the moment of its entry"). To the extent that Defendants contend that the stipulation allows Plaintiffs merely to request attorney fees while also allowing Defendants to oppose any and all fees for Plaintiffs, that is an unreasonable interpretation. A plaintiff always has the right to ask a Court to award fees. If that is all that Defendants intended to give Plaintiffs in ¶4 of the stipulated judgment, it is hollow. If that is what Defendants intended, they should have more clearly set forth their position.

## B. Reasonable Attorney Fees under Or. Rev. Stat. § 20.075

In these two lawsuits in which Plaintiffs stipulated to a judgment of $18,000 in damages, Plaintiff seek almost $200,000 in attorney fees. For work performed through November 16, 2018, Plaintiffs request $97,640 in fees against Progressive and $54,465 in fees against Chevron. For work performed after November 16, 2019, Plaintiff seek additional fees for work on their reply brief, in preparing for a court hearing that has not been scheduled, and for additional work on this case. In their reply, Plaintiffs request against Chevron an addition $18,587 in fees for work on the reply brief plus $2,062.50 in fees for anticipated work to be performed in preparing

PAGE 11 – OPINION AND ORDER

for a court hearing. Also in their reply brief, Plaintiffs request against Progressive an additional $23,501.00 in fees for continued work on the case and $2,062.50 for an anticipated court hearing. Progressive responds that, if Plaintiffs are entitled to any fees, the amount should be no greater than $26,616. Chevron does not identify an amount that it would consider reasonable.

The Court has considered the statutory factors under Or. Rev. Stat. § 20.075 as they apply to this case. During this litigation, Plaintiffs asserted some positions that the Court found lacked any basis in fact or law, such as Plaintiffs' claim for elder abuse. Defendants also asserted some positions that the Court found wanting for legal support, such as Progressive's claim that a party is not responsible for a nuisance or trespass that it did not directly cause. The Court finds that neither Plaintiffs nor Defendants engaged in willful, bad faith conduct during this litigation, and the parties reached a settlement agreement just a few months after the Court's Opinion and Order granting Defendants' motions for partial judgment on the pleadings. Plaintiffs also rejected a settlement offer for $10,001, which would have made their claims ineligible for an award of attorney fees under Or. Rev. Stat. § 20.080. This does not, however, reflect a self-serving maneuver by Plaintiffs' counsel, but instead the reality that for many prospective plaintiffs, the cost of attorney fees makes litigation, even for valid claims, financially untenable. The question for the Court, however, is what is a reasonable attorney fee in this case?

1. **Hourly Rates**

Under the loadstar method, described above, courts multiply the reasonable hourly rate for each timekeeper by the reasonable number of hours that timekeeper worked on the case. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Attorney fees are not limited to hours worked by attorneys but may also include work performed by paralegals and law clerks, so long as that work is not clerical in nature. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

Courts determine reasonable hourly rates for attorneys and paralegals by looking to "the prevailing rate in the community for similar work; no more, no less." *Moreno*, 534 F.3d at 1111.

Plaintiffs seek the following rates for their legal services: attorney Brooks Foster at $375 per hour; attorney Andrea Meyer at $275 per hour; attorney Bradley Crittenden at $250 per hour; law clerk and later-attorney Kelsey Peddie at $175 per hour; paralegals Ethan Jones and Skylar Washabaugh at $175 per hour; and law clerk Perry Kantor at $175 per hour. The Court finds that Plaintiffs' hourly rates are reasonable based on a review of the Oregon State Bar 2017 Economic Survey hourly billing rates for lawyers in the Portland area. (available at https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf). Mr. Foster's rate of $375 per hour is at the 75th percentile for attorneys with 13-15 years of experience. Similarly, Ms. Meyer's rate of $275 per hour is $25 less than of the 75th percentile for attorneys with 4-6 years of experience, and Ms. Meyer has been a practicing attorney in Oregon for six years. Mr. Crittenden's rate of $250 per hour is at the 75th percentile for attorneys with 0-3 years of experience. Finally, the Court concludes that a rate of $175 per hour is reasonable for law clerks and paralegals.

**2. Hours Worked**

Under the loadstar method, the Court must determine the number of hours that reasonably could have been billed to a private client on the fee-bearing claims. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Courts do not award fees for work that is "excessive, redundant, or otherwise unnecessary." *McCown*, 565 F.3d at 1102. This case involved drafting substantially one complaint, as Otis and Goldingay asserted identical claims. On Plaintiffs' fee-bearing claims against Progressive, Plaintiffs responded to Progressive's motion to dismiss and argued against Progressive's motion to the Court. After the motion to dismiss was granted in part and denied in part, Plaintiffs amended the complaint. Defendants

counterclaimed against Plaintiffs and moved for partial judgment on the pleadings on non-fee-bearing claims, which the Court granted. Several months later, the parties settled.

Progressive takes issue with Plaintiffs' calculation of reasonable hours and asserts that Plaintiffs billed excessive hours for relatively simple tasks. Progressive also argues that Plaintiffs' communications with DEQ should not be entitled to any attorney fees. Progressive further contends that Plaintiffs' billing records contain a number of hours billed for clerical work, which should not be included in a fee award.

Courts consider tasks to be clerical, and thus not compensable in an attorney fee award, if they involve "filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling Savings Bank v. Sequoia Crossing, LLC*, 2010 WL 3210855, at *7 (D. Or. August 11, 2010). In reviewing Plaintiffs' submissions, the Court has observed numerous billing entries that fall into the category of clerical work. For example, Plaintiffs submit billing entries for tasks such as formatting and filing the complaint, docketing deadlines, setting calendar reminders, bates stamping documents, and downloading and saving electronic files. Specifically, there are numerous entries in the billing records by paralegal Skylar Washabaugh for tasks such as "save to electronic file and docket deadline." The Court notes 2.2 hours spent on clerical work for Progressive, 0.7 hours of clerical work for Chevron, and an additional 7.4 hours of clerical work for both. Accordingly, the Court deducts 4.4 hours of clerical work at a rate of $175 per hour from the fees owed by Chevron and 5.9 hours of clerical work at a rate of $175 per hour from the fees owed by Progressive. This results in a net deduction of $770 from the fees owed by Chevron and $1,032.50 from the fees owed by Progressive.

PAGE 14 – OPINION AND ORDER

The Court also concludes that some of Plaintiffs' hours are unreasonable and excessive. After analyzing Plaintiffs' records, the Court concludes that it was unreasonable to spend 66.1 hours responding to Defendants' motion to dismiss, 25.8 hours working on legal research memoranda, and more than 29 hours preparing settlement documents. Plaintiffs also spent 56.8 hours preparing the fee petition and 134.5 hours preparing the reply briefs in support of the fee petition. These totals are unreasonable in this case.

District courts have wide discretion to determine the number of hours reasonably expected to complete a task. *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 484-85 (9th Cir. 1988). The Court does not doubt that that the time claimed by Plaintiffs' counsel was actually spent on each task, but instead concludes that the number of hours worked was not reasonable. For example, courts have concluded that billing 24.5 hours to prepare a 37-page brief was excessive and unreasonable, and only allowed 12 hours to be awarded in attorney fees. *Reyna v. Astrue*, 2011 WL 6100609, at * 8 (E.D. Cal. December 6, 2011); *see also Quesnoy v. Oregon*, 2018 WL 5043772, at *5 (D. Or. Oct. 17, 2018) (finding 20.3 hours to prepare a petition for attorney fees reasonable).

In this case, the Court reduces the number of hours spent on certain tasks to a number that the Court finds reasonable based on the Court's experience. Plaintiffs spent 25.8 hours on legal research responding to the motions to dismiss, with many hours performed by law clerks; the Court determines that the 12.5 hours spent by Mr. Foster were reasonable. Deducting the hours spent on legal research by law clerks, the Court reduces Plaintiffs' fee against Progressive for legal research on the motion to dismiss by $2,327.50. Plaintiffs also spent 66.1 hours responding to the motion to dismiss; the Court considers that 30 hours is reasonable. Plaintiffs spent 11.8 hours responding to a motion for extension of time; the Court finds that at most 2 hours would

The Court also concludes that some of Plaintiffs' hours are unreasonable and excessive. After analyzing Plaintiffs' records, the Court concludes that it was unreasonable to spend 66.1 hours responding to Defendants' motion to dismiss, 25.8 hours working on legal research memoranda, and more than 29 hours preparing settlement documents. Plaintiffs also spent 56.8 hours preparing the fee petition and 134.5 hours preparing the reply briefs in support of the fee petition. These totals are unreasonable in this case.

District courts have wide discretion to determine the number of hours reasonably expected to complete a task. *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 484-85 (9th Cir. 1988). The Court does not doubt that that the time claimed by Plaintiffs' counsel was actually spent on each task, but instead concludes that the number of hours worked was not reasonable. For example, courts have concluded that billing 24.5 hours to prepare a 37-page brief was excessive and unreasonable, and only allowed 12 hours to be awarded in attorney fees. *Reyna v. Astrue*, 2011 WL 6100609, at * 8 (E.D. Cal. December 6, 2011); *see also Quesnoy v. Oregon*, 2018 WL 5043772, at *5 (D. Or. Oct. 17, 2018) (finding 20.3 hours to prepare a petition for attorney fees reasonable).

In this case, the Court reduces the number of hours spent on certain tasks to a number that the Court finds reasonable based on the Court's experience. Plaintiffs spent 25.8 hours on legal research responding to the motions to dismiss, with many hours performed by law clerks; the Court determines that the 12.5 hours spent by Mr. Foster were reasonable. Deducting the hours spent on legal research by law clerks, the Court reduces Plaintiffs' fee against Progressive for legal research on the motion to dismiss by $2,327.50. Plaintiffs also spent 66.1 hours responding to the motion to dismiss; the Court considers that 30 hours is reasonable. Plaintiffs spent 11.8 hours responding to a motion for extension of time; the Court finds that at most 2 hours would

have been appropriate. Plaintiffs spent 28.6 hours responding to Progressive's discovery requests; the Court finds that only 20.5 hours were reasonable to respond to Progressive's discovery requests. Plaintiffs spent 56.8 hours preparing their motion for attorney fees; the Court finds that 20 hours was reasonable. Plaintiffs spent 29.6 hours preparing settlement documents; the Court finds that 15 hours was reasonable. Finally, the Court has identified 7.2 hours that Plaintiffs billed responding to Chevron's motions to dismiss and for partial judgment on the pleadings, which involved claims not entitled to fees. Because most of the work on the motion to dismiss was performed by Mr. Crittenden, the Court subtracts from Plaintiffs' attorney fees against Chevron 7.2 hours times Mr. Crittenden's hourly rate of $250 per hour, or $1,800.00.

The Court has reduced the attorney fees for the tasks identified above as excessive by the percentage of hours that the Court finds to be unreasonable, keeping the percent of total hours worked by each timekeeper consistent. For example, if the Court determines that out of ten hours billed, only two were reasonable, the Court would multiply the requested fees by 0.2. Thus, the Court finds that Plaintiffs' fees responding to Progressive's motion to dismiss should be reduced by $9,796.43, fees preparing a response to the motion for extension of time should be reduced by $1,632.32 for each of Chevron and Progressive, fees responding to Progressive's discovery requests should be reduced by $2,483.18, fees preparing the motion for attorney fees should be reduced by $5,584.79 for each Chevron and Progressive, and fees preparing settlement documents should be reduced by $2,663.51 for each Chevron and Progressive.

In addition, Plaintiffs seek a $18,587 in fees from Chevron for preparing Plaintiffs' reply brief on the motion for attorney fees and $2,062.50 for preparing for oral argument that has not even been scheduled on the motion for attorney fees. Plaintiffs seek $23,501 from Progressive for preparing the reply brief and $2,062.50 for preparing for oral argument. In total, the sum of

the amounts sought by Plaintiffs in their opening brief, reply brief, and for oral argument preparation equals $75,114.40 in fees against Chevron and $123,203.50 in fees against Progressive. The Court awards no fees for oral argument preparation in this case, as no oral argument was held.

The Court also finds that working 134.5 hours on Plaintiffs' reply briefs is excessive. The billing sheet submitted by Plaintiffs (ECF 88-1) also contains numerous hours of clerical work, such as bates stamping invoices. Further, the Court awards no hours for work performed by unidentified individuals "BAM" and "JSF" because the Court cannot ascertain the proper hourly rate for those unnamed persons. The Court also awards no hours for research performed by a law clerk in this case, based on likely inefficiencies. Of the remaining hours spent on the reply briefs, after discounting hours for unidentified individuals and law clerks, 65 percent of the hours were attributed to Mr. Foster, 26 percent to Mr. Crittenden, and 9 percent attributed to paralegal Mr. Jones. The Court finds that it was reasonable to spend no more than 20 hours on each reply brief. The Court attributes 13 hours of work on each reply brief to Mr. Foster at a rate of $375 per hour, 5.2 hours on each reply brief to Mr. Crittenden at a rate of $250 per hour, and 1.8 hours on each reply brief to Mr. Jones at $175 per hour. The Court concludes that Plaintiffs should be awarded no more than $6,490 per reply brief.[4] Accordingly, the Court reduces Plaintiffs' attorney fees for the reply briefs by $17,011 for Progressive and $12,097 for Chevron.

Plaintiffs seek a total of $123,203.50 in attorney fees against Progressive. Based on the Court's calculations and explanations above, the Court reduces the amount awarded against Progressive as follows:

---

[4] The Court notes that the vast majority of the hours billed during the period between November 2018 and February 2019 were attributed to both Chevron and Progressive, with only slightly more hours billed to Progressive than Chevron.

PAGE 17 – OPINION AND ORDER

| Reason | Reduction |
| --- | --- |
| Clerical work | $1,032.50 |
| Excessive hours for legal research by law clerk | $2,327.50 |
| Excessive hours on motion to dismiss | $9,796.43 |
| Excessive hours on opposition for extension | $1,632.32 |
| Excessive hours on discovery | $2,483.18 |
| Excessive hours preparing motion for fees | $5,584.79 |
| Excessive hours on settlement documents | $2,663.51 |
| Excessive hours preparing reply brief on fees | $17,011.00 |
| Hours preparing for oral argument not held | $2,062.50 |
| **TOTAL REDUCTION (PROGRESSIVE)** | **$44,593.73** |

Plaintiffs seek a total of **$75,114.40** in attorney fees against Chevron. Based on the Court's calculations and explanation above, the Court reduces the amount awarded as follows:

| Reason | Reduction |
| --- | --- |
| Clerical work | $770.00 |
| Work on non-fee bearing claims | $1,800.00 |
| Excessive hours on opposition for extension | $1,632.32 |
| Excessive hours preparing motion for fees | $5,584.79 |
| Excessive hours on settlement documents | $2,663.51 |
| Excessive hours preparing reply brief on fees | $12,097.00 |
| Hours preparing for oral argument not held | $2,062.50 |

| TOTAL REDUCTION (CHEVRON) | $26,610.12 |
|---|---|

## CONCLUSION

Plaintiffs' Motion for Award of Reasonable Attorney Fees (ECF 73) is granted in part. After considering the written submissions of the parties and making the deductions detailed in this Opinion and Order, the Court awards Plaintiffs collectively $78,609.77 in attorney fees against Progressive Casualty Insurance Company and awards Plaintiffs collectively $48,504.28 in attorney fees against Chevron U.S.A. Inc. This reflects a reduction of approximately 36 percent from the total amount requested by Plaintiffs.

**IT IS SO ORDERED**.

DATED this 22nd day of February, 2019.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
